### SEWARD, Admrx., Plaintiff-Appellee v SCHMIDT, Defendant-Appellant.

Ohio Appeals, 2nd District, Clark County.

No. 428. Decided August 22, 1942.

Clifford R. Curtner, Dayton. for defendant-appellant.

S. A. Bowman, Springfield; Robert P. Morgan, Springfield, for plaintiff-appellee.

## OPINION

By GEIGER, PJ.

This matter comes before us on appeal from a judgment of the Court of Common Pleas awarding judgment in the sum of $4,500.00,

to the plaintiff who is the administratrix of her deceased husband. This is the second time this case has been before this court. Originally the decedent brought an action to recover for injuries resulting from the same alleged negligent act of the defendant. That action resulted in a verdict of $5,000.00 in favor of the decedent, then in life. This court set aside that judgment for numerous prejudicial errors in the charge of the court. The decision of this court, speaking through Barnes, J., will be found under the title of **Seward v Schmidt, 30 O. L. A. 684.** The court in that case discussed the issues of fact but reversed on the ground of prejudicial error in the charge of the court. The court, speaking through Barnes, J., says, on page 694,

"There is very grave doubt as to whether or not the verdict should not be set aside on the weight of the evidence. However, since a new trial will be granted upon errors so manifest as to be prejudicial, we do not consider it advantageous to go into a prolonged analysis of the weaknesses or strength of the plaintiff's case. Therefore, we refrain from making a finding that the verdict and judgment were against the manifest weight of the evidence."

It is to be pointed out that the present case is not a re-trial of the case then under examination, but is a new trial upon a new cause wherein an administratrix is the party plaintiff. How nearly the evidence in this case corresponds to that in the former case does not clearly appear from the record and even if it did, we would not be justified in determining that because in the original case there may have been "very grave doubt as to whether or not the verdict should not be set aside on the weight of the evidence" that this doubt in the original trial should militate against the plaintiff in this case.

In the original case, the plaintiff himself testified as to the accident while in this case his death prevented that evidence. The evidence in the former case was not competent in this case under the statute permitting testimony of a deceased witness to be considered in a subsequent trial of the same case because, as stated, this is not the same case.

The petition in the present case alleges that Florence Seward is the administratrix of Fred Seward, deceased, who died on the 7th day of April, 1939, leaving surviving him, Florence Seward, his widow, and certain other relatives, not children. The plaintiff asserts that on the 30th day of October, 1937, at about 10:30 P. M., decedent was at the intersection of West Main Street and Dakota Street and started to cross West Main Street to the south side of the street and had proceeded approximately six feet from the curb line and while he was still in the north half of West Main Street an automobile, without warning, operated by the defendant, collided with and ran over the decedent; that the defendant was, at the time, operating his automobile in an easterly direction at an ex-

cessive rate of speed; that at that time the street was clear and unobstructed; that certain ordinances were in force, one of which was later withdrawn from the consideration of the jury. It is alleged that West Main Street was a main thoroughfare and part of U. S. Highway No. 40.

It is further alleged that as the sole and proximate result of the decedent being struck and knocked to the pavement, said decedent was injured as follows: Both legs were broken and shattered; he received concussion of the brain; internal injuries and other cuts and bruises and also a severe nervous shock and that due to said injuries the decedent developed tuberculosis and died April 7, 1939; that his death was directly and proximately caused by the injuries and resulting tuberculosis.

It is alleged that the defendant was guilty of negligence in six different particulars, which we summarize as follows: A speed greater than was reasonable and proper having due regard to the traffic, etc.; at a speed greater than would permit him to stop within the assured clear distance; operating his automobile without due regard to the safety and rights of pedestrians; without headlights (this allegation of negligence was afterwards withdrawn as not being supported by any evidence).

An allegation of negligence which becomes important under the evidence is that the defendant was negligently and carelessly operating his said automobile in that he was not operating it on the right side of the center of said West Main Street. It is further stated, as an act of negligence, that he was not keeping a proper lookout ahead and in failing to timely and audibly warn the decedent of his approach; it is alleged that said injuries and said death were caused solely by the negligence of the defendant and were the direct and proximate result of said negligence; that the action is brought for the exclusive benefit of the next of kin, who have suffered pecuniary loss and have been damaged on account of the death of Fred Seward in the sum of $20,000.00.

After certain preliminary motions, the answer was filed admitting that Florence Seward is the administratrix; that on the 30th day of October, 1937, Fred Seward was involved in an automobile accident with an automobile driven by the defendant; that Seward was injured, but not to the extent alleged, when he was proceeding from the north side of Main Street to the south side thereof, east of the cross-walk, and when he walked into the side of the automobile driven by defendant, but defendant denied that said injuries received in said collision resulted in his death.

All other allegations are denied.

For a second defense it is alleged that even if the defendant was, to some extent, negligent in the premises, which is denied, that the collision between Seward and the automobile and any injuries resulting therefrom, were directly and proximately caused by the negligence of Seward or contributed to by him in the respects substantially as follows: That Seward negligently passed

from the north curb of West Main Street toward the south curb.

It is alleged that at the time said Seward was negligently hurrying from the north side to the south side of the street in the path of busy east and west traffic without using his faculties; that he should have seen the approach of the car driven by the defendant on the south side of the street and that having seen should have known that the attempt to cross was dangerous. It is alleged that Seward was hurrying from the north side toward the south side between intersections without looking or otherwise exercising his faculties, etc.; that said Seward walked into the path of the oncoming traffic while intoxicated and not having his full and complete faculties.

The defendant denies that plaintiff was the recipient of any benefits from the deceased Fred Seward or suffered any pecuniary damage by reason of his death.

To this a reply is filed by the administratrix admitting the existence of the ordinances plead and of Section 2E locating the place where the accident occurred in the congested district of the city.

The case was tried by a jury and after the introduction of plaintiff's evidence, a motion was made for directed verdict which was overruled. After the defendant had introduced his evidence, the motion was repeated and overruled and after the verdict, in the sum of $4,500.00, a motion for judgment non obstante veredicto, was overruled.

In this Court the defendant-appellant submits assignments of error covering 14 specific assignments, which may be grouped and condensed as follows:

Error of the trial court in reference to the speed statute and the measure of damages.

Error in refusing Special Instruction No. 9.

Error in increasing the burden of proof required of defendant.

Error in the general charge on contributory negligence and on closely built up section.

That the court erred in assessment of interest from date of the verdict.

That the verdict was not sustained by sufficient evidence and was contrary to law.

That the verdict was rendered under the influence of passion and prejudice and was excessive.

That the court erred in sustaining the objections, in part, to the bill of exceptions.

Other errors.

This case as presented to us is unusual for the reason that after the testimony had been taken, and before the same had been transcribed, Mr. John Martin, the Official Stenographer, died as a result of an automobile accident and it was claimed that no one could

transcribe his notes. However, the charge of the court was intact before the death of Mr. Martin. Counsel for appellant prepared, in narrative form, his claim as to the testimony, which was objected to by appellee as not being a correct interpretation of the evidence. Upon this objection, the court heard the argument of counsel and determined that in certain respects the testimony as set out in the narrative form was incorrect and pointed out in what manner the same should be corrected. To this the appellant excepts. It is also claimed that due to the death of Mr. Martin the appellant has not the opportunity to properly present the case to this court and that, therefore, a new trial should be granted.

While the briefs in this case are long, the factual issues are simple, presenting the ultimate question as to whether the defendant was guilty of negligence resulting in the death of the decedent in striking him as he sought to cross West Main Street as a pedestrian at the point indicated in the petition or whether the accident resulted solely from the negligence of the plaintiff in the method in which he attempted to cross the street or that he contributed to the accident by his own negligence.

The facts in the case briefly are that the defendant and two other companions on Halloween evening in 1937 drove westward on High Street to its termination, then crossed to Main Street and proceeded eastward on Main Street. There was considerable traffic due to the holiday season and defendant's car was slowed down before he reached the Dakota Street crossing by a traffic accident; that after he proceeded eastward there was an automobile parked on the south side of Main Street, driven by one Paul Mercer, which, defendant alleges, at the very instant he passed was turned from the curb by Mercer, the driver, to such an extent that Schmidt had to swerve his car to the left. Schmidt claims that he did not reach the center line of Main Street but that turning his car to avoid striking the Mercer car, he suddenly discovered Seward emerging from behind a west going car and that Seward stepped into the running board of defendant's car as the same was being driven eastward at not over 20 miles per hour. It is claimed that Seward was guilty of negligence in that he did not use the cross-walk, but sought to pass over Main Street east of the line of Dakota Street extended across Main Street. The situation at this particular point is rather unusual in that while Dakota Street intersects Main Street, it does not cross the same as the corresponding public passageway on the south side of Main Street is an alley closely adjacent to an engine house. There was no marked pedestrian crossing and an unusual situation arose from the large space that was paved in front of the engine house, which was on the east side of the alley which would have marked Dakota Street, if the same had been extended across the street—Main Street. There is also a street running from High Street northeast diagonally to Main Street reaching Main Street at

the intersection of Dakota Street with that street and in close proximity to the engine house.

The single point is whether or not the defendant was guilty of negligence and that plaintiff was without negligence.

As to the conduct of the plaintiff, it is claimed by the defendant that he was guilty of negligence in that without observing the east going traffic, he stepped from behind a west going car into the path of defendant's car as it was proceeding eastward, south of the center line of Main Street.

It is also alleged that the plaintiff was intoxicated and not in possession of his faculties sufficient to care for his own welfare.

On the other hand, testimony is introduced by the plaintiff to the effect that the decedent stepped from the curb in front of the Wedge Cafe and that he approached the crossing in a careful and prudent manner observing and waiting for west bound traffic which was going on the north half of the street; that after the west bound traffic had passed, he stepped forward a few feet without looking for east bound traffic and that defendant's car struck him while he was on the north side of the center line.

As is usual in these cases, there is a conflict of the evidence. It seems to be generally conceded that after being struck, the decedent fell to the pavement on the north side of the center line. Defendant claims he stopped his car within ten feet and that the left wheel was south of the center line which would be on defendant's right hand side. There is also a conflict of evidence as to whether or not the plaintiff was intoxicated. One witness testified that he had been drinking all day and others testified that they smelled liquor upon his breah and still others that he was sober.

Out of all this conflicting evidence the jury arrived at the conclusion, in both cases, that the decedent and in the present case plaintiff was entitled to recover. This matter being a question for the jury, we are not disposed to set aside the verdict as being against the weight of the evidence so far as it relates to the conduct of the plaintiff and the defendant resulting in the accident. We are aware of the fact that jurors sometimes give verdicts more out of sympathy than upon sound judgment, but we do not find the same is the fact in this case. We, therefore, arrive at the conclusion that there was no prejudicial error of the court in overruling the several motions of the defendant.

The appropriate assignments of error touching the matters just passed upon will be overruled.

The more difficult part of the case, as in the trial of the original case, arises from the charge of the court, which the defendant alleges is prejudicially erroneous in many respects. The defendant presented many special charges which the court gave before argument.

While some of these requested charges bore closely upon what

might be prejudicial error against the plaintiff, yet the plaintiff makes no complaint about them and having been given as requests of the defendant, they may not be considered as prejudicial against the judgment rendered.

These eight charges seem to cover most of the possible situatons arising from this accident. Defendant does complain that the court in its general charge should have elaborated upon those special charges which the plaintiff submitted to the court before argument. We do not believe there is any merit in this ▋ matter. If plaintiff, in attempting to write a favorable charge proceeds to ask the court to give a charge covering most of the points involved in the case before argument, he may not complain if the court in its general charge neglects to re-state the law.

It is different, however, with Special Instruction No. 9 which was requested but refused. It is to the effect that if the jury should find that the automobile parked along the south side pulled or attempted to move immediately into the line of traffic of defendant and that such movement of the car caused Schmidt to turn his car to the left to avoid the collision, you are instructed that such act upon the part of the motorist moving his car was negligence as a matter of law and that if you further find that such act on the part of the motorist who had been parked in pulling his car from the south curb was the sole and proximate cause of the accident, then your verdict must be for the defendant.

We think the court properly refused this charge. In the first place Mercer was not a party to this action. There ▋ was no attempt to recover anything from him and his moving his car was not the proximate cause of the accident. It may have been a remote cause in that it caused Schmidt to turn his car to the left, but we can see no reason why Schmidt can avoid responsibility for hitting the plaintiff as a result of his attempt to avoid striking the car of Mercer parked on the other side of the street. That would simply be to say that a defendant would not be guilty of negligence if he could find some excuse for that negligence in no way remotely connected with the act of the plaintiff.

We find no error in the refusal of this charge. We, therefore, find that the court did not commit any prejudicial error in giving the eight special charges or refusing the ninth.

The court after giving the special charges, gave a general charge covering 25 pages. We have read this charge and while there are some things that might have been omitted or some that might have been a little more plainly stated, yet we find no prejudicial error such as was discovered in the former case of Seward v Schmidt. Counsel for defendant has been so diligent in asserting prejudicial error that he has practically condemned every statement made by the court. We have no disposition to be hypercritical about

a court's charge. It is a difficult matter to give 25 pages on a case that extended over three or four days without some slight expression that might be distorted into alleged error.

The appropriate assignments of error relative to the court's charges will be overruled.

Counsel for defendant complain that the administratrix, as the wife of the decedent was not as virtuous as she should have been, but that over a period of years she consorted with one Fred Himes often signing her name as Florence Himes and on some occasions declaring that she was the wife of Himes. The jury was instructed that they might take into consideration the domestic relations between Seward and his wife. No one can say that they did not take into consideration her action when they gave her a verdict of $4,500.00 for the loss of a husband. But, however that may be, the case was not based upon the question as to whether the widow preserved inviolate all the rules that should have controlled her as the wife of Seward. The question, in cases of this kind, is one of cold blooded calculation as to the pecuniary loss suffered by the widow through the death of her husband and we may not be swayed by the preachments of counsel for defendant that no award should be made to an unfaithful wife.

We come now to the serious question in this case and that is whether the plaintiff has proven that her decedent died as a result of the injuries he received. This matter, of course, quite largely depends upon the testimony of physicians and those skilled in questions of this kind. Generally, the physicians have all testified that in the knitting of bones that have been broken there is a drain upon the system of the injured through the fact that the calcium needed must be supplied through the blood stream. The evidence is quite clear that this decedent had been afflicted with tuberculosis for many years prior to the accident and there is considerable evidence that at that time he was the victim of an advanced tubercular condition. He was injured in October. He stayed in bed until the 28th day of January, 1938, he was discharged from the Springfield City Hospital and committed to the Tuberculosis Hospital, where he died of tuberculosis on the 7th day of April, 1938. It may be noted, in passing, that at the first trial, during his lifetime, his then physical condition was so apparent that the court was required to make a ruling in reference to his personal presence at the trial.

There is in evidence the hospital sheet showing the admission of the decedent with well developed tubercular condition and that he remained in the hospital until his death from that cause.

Doctor Rinehart (page 21 of the record) stated that he was called to attend Seward on the night of his injuries where he found him suffering from a mild concussion of the brain and had multiple body contusions and lacerations and comminuted fractures of the

upper ends of the tibia and fibula of both legs. Seward showed improvement in the healing of the limbs and in the early part of January examination revealed he had a very active case of pulmonary tuberculosis. He was discharged from the Springfield Hospital on January 28th, and became a patient in the Tuberculosis Sanitarium. Upon being inquired of as to his opinion as to what effect fractures of the leg would have on causing tuberculosis, he stated that "in his opinion it was a probable cause"; that in the repairing of a bone injury calcium is drained from the various parts of the body to increase the healing process and that the lessening of the calcium in the system would no doubt lower the resistance to an arrested or acute case of tuberculosis causing it to become active.

We have the picture of a man working at various jobs at various points in the country, sometimes attended by his wife and other times living alone. He apparently at times drank heavily, especially on the day of the accident. The testimony of the doctors is by no means satisfactory to the effect that the accident caused or activated the arrested tuberculosis. At most, the doctors express a probability.

We consider the doctors' testimony as sustaining the conclusion that there was sufficient evidence to justify the verdict in favor of the plaintiff on the point that the death was due to the accident rather than to the natural progress of a case of tuberculosis.

Interest should be computed from the date of the judgment and not from the date of the verdict.

We cite two decisions of the Supreme Court and rely upon them without an extensive discussion.

As to cross walks,—see:

**Whitaker v Leubbering, 101 Oh St 292.**

As to the much more important question as to proximate cause, —see:

**Smith v Zone Cabs, 135 Oh St 415,**
where it is held:

"In a personal injury action by a pedestrian against an operator of a motor vehicle. where it appears from the evidence that the pedestrian is guilty of negligence per se by reason of violating an ordinance of a municipality and it further appears that there is evidence tending to show negligence on the part of the operator of the motor vehicle and direct causal connection between such operator's negligence and pedestrian's injury the issue still remains as to whether pedestrian's negligence directly contributed to produce his own injury and is one for the jury provided the state of record is such that reasonable minds may differ on the conclusions to be drawn from the evidence on that issue."

The judges of the Supreme Court divided four to three on the

question under examination. The case should be read carefully. It seems quite pertinent.

We believe that these cases are determinative of the questions presented in the instant case.

Judgment of the Court below affirmed as modified as to interest.

HORNBECK, J., concurs.
BARNES, J., dissents.

BARNES, J., Dissents.

In my opinion there are many reasons why the judgment in the above entitled cause should be reversed.

The decedent, while in a staggering intoxicated condition, jay walked across Route No. 40, in Springfield, Ohio, at a point where there was always heavy motor traffic.

He passed out between parked cars at the curb, waited for a westbound car to pass, and immediately walked into the defendant's car and was severely injured. He was immediately admitted to a hospital and after a period of time was transferred to the tuberculosis hospital, where he died. His widow, as administratrix, brings the present action for the benefit of next of kin. There were no children and she was the only next of kin. The evidence points very strongly to the fact that she and the husband were separated at the time of the accident. This fact was so noted at the hospital at the time of his entrance. The widow was living in Canton with a man by the name of Himes, and she went under the name of Himes. She admits that she signed numerous papers under the name of Himes, representing that she was the wife of Himes.

Under this situation the amount of the verdict in the sum of $4,500.00 is excessive.

The greater weight of the evidence presented by plaintiff's medical experts fails to establish a causal connection between decedent's injuries and the subsequent development of tuberculosis.

Further, I am constrained to the view that the greater weight of the evidence denies defendant's negligence as the proximate cause of the injuries.

Lastly, I think the evidence overwhelmingly supports the claim of decedent's negligence as a matter of law.

If I understand it correctly, the majority concedes the theory of plaintiff's negligence per se, but claims that the question of proximate cause remains one for the jury. I recognize that in all personal injury cases the question of proximate cause is a necessary element of proof, but where the proximate cause is so apparent as in the instant case, there is no room for reasonable minds to differ.

When decedent, in his drunken, staggering condition jay walked across the street and stepped into a car and was injured, there certainly is no room to question that such conduct was the proximate cause of the accident.